ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| Peace Ambition Construction Company | )     ASBCA Nos. 63938, 64024 |
| | ) |
| Under Contract No. H92237-21-P-3013 | ) |

APPEARANCE FOR THE APPELLANT:     J. William Peironnet, IV, Esq.
       Law Offices of J. William Peironnet
       Los Gatos, CA

APPEARANCES FOR THE GOVERNMENT:     Caryl A. Potter, III, Esq.
       Air Force Deputy Chief Trial Attorney
     Isabelle P. Cutting, Esq.
       Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE HAMADY ON
GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Peace Ambition Construction Company (appellant) filed appeals from the denial of its claims involving a contract to provide forklifts for use at Camp Thompson in Afghanistan that had been terminated for convenience. The Air Force (government) filed a motion to dismiss the appeals for lack of jurisdiction pursuant to ASBCA Rule 7(b) because appellant's claims arise from a contract between appellant and its subcontractor executed after the government terminated appellant's contract. For the reasons set forth below, we deny the government's motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On November 25, 2020, the government issued firm fixed price Contract No. H92237-21-P-3013 to appellant to provide two Material Handling Equipment 30K forklifts for "delivery and pickup" at Camp Thompson for twenty days in the amount of $1,450 per day for a total price of $29,000 (R4, tab 1 at 3; compl. at 2).

2. On November 27, 2020, appellant entered into a subcontract, leasing two forklifts owned by Al-Saif Heavy Machinery & Logistic Services (Al-Saif) (R4, tab 2; compl. at 2).

3. On December 1, 2020, appellant delivered the two forklifts outside the gates of Camp Thompson. Government personnel transported the forklifts inside the camp. (Compl. at 2)

4. On December 13, 2020, Contracting Officer (CO) Major Daryle Palmer terminated appellant's contract for convenience (R4, tab 3 at 3).

5. Between December 13, 2020, and January 2, 2021, appellant attempted to reach out to its government point of contact to retrieve the forklifts from Camp Thompson but was denied access (compl. at 3).

6. On January 2, 2021, the parties executed bilateral Modification No. P00001, which reduced the period of performance from 20 days to 13 days and increased the daily rate for the forklifts from $1,450 to $2,153.85, resulting in a total contract value of $28,000.05 (R4, tab 4). The modification incorporated "Attachment 2, Termination for Convenience Memo" and stated that "[a]ll other terms and conditions remain unchanged" (*id.* at 1).

7. On January 2, 2021, appellant emailed Major Palmer informing him of appellant's inability to retrieve the forklifts from the camp (R4, tab 10 at 1; compl. at 3; app. opp'n at 3).

8. On January 3, 2021, appellant states Major Palmer responded to the email, asking appellant to coordinate with SSG Russel to recover the forklifts and stating that "Once you recover the Forklifts, send me a claim and I will modify the contract" (R4, tab 10 at 1, tab 11 at 1, 77, 115; compl. at 3). On the same day, appellant either modified its contract (compl. at 3) or entered into a "new contract" (compl. at 4) with Al-Saif, wherein appellant was required to return the forklifts or pay the replacement cost of the forklifts in the amount of $360,000, and, until either of those occurred, a daily rental fee of $2,153.85, would accrue (compl. at 4). Appellant states that it signed the "Contract Modification with ALSAIF (the [v]endor of [f]orklifts), [because] we [t]hought that the 2x [f]orklifts [would] be retrieved soon" (R4, tab 6 at 26).

9. Between December 13, 2020, and August 2021, appellant reached out to various government points of contact requesting assistance in retrieving the forklifts from Camp Thompson until appellant fled Afghanistan due to threats from the Taliban for doing business with the government (compl. at 4; *see generally* R4, tab 10 at 62-65, 76-81).

10. On April 11, 2022, appellant submitted a certified claim to the government for $1,387,386.45, for the replacement cost of the two forklifts it delivered to Camp Thompson, plus the daily rental cost of the two forklifts from December 20, 2020 to the date of the claim (R4, tab 6 at 37).

11. On March 21, 2024, appellant submitted a claim to the government for $2,914,466.10, updating its claim for costs of the forklifts incurred to date (R4, tab 9).

12. On April 30, 2024, the government issued a contracting officer's final decision (COFD) on appellant's April 11, 2022, and March 21, 2024, claim submissions finding that "the government shall settle this claim in the amount of $360,000.00" because the forklifts were not recovered from Camp Thompson "due to unforeseen circumstances prior to, or after U.S. Forces departed Afghanistan" (R4, tab 10 at 3). The government denied the remainder of appellant's claim associated with the daily rental costs of the forklifts because it determined those costs arose from an agreement between appellant and its subcontractor (R4, tab 10 at 3).

13. On June 27, 2024, appellant filed an appeal of the COFD, stating that its appeal concerned "a contract dispute with Al-Saif Heavy Machinery and Logistic Services," and contending that appellant's "attempts to retrieve the forklifts . . . have been obstructed, preventing us from fulfilling our obligations under the contract with Al-Saif Heavy Machinery and Logistic Services" (gov't mot. SUMF ¶ 8; Notice of Appeal). The appeal was docketed as ASBCA No. 63938.

14. On September 14, 2024, appellant submitted a certified claim to the government for $3,127,697.25, updating its claim for costs incurred to date, including the $360,000 in replacement costs for the lost forklifts conceded in the COFD dated April 30, 2024 (R4, tab 14).

15. On September 17, 2024, the government issued a COFD denying appellant's September 14, 2024, claim, for the same reasons stated in the government COFD dated April 30, 2024 (R4, tab 15).

16. On November 30, 2024, appellant appealed the government's September 17, 2024, COFD. This appeal was docketed as ASBCA No. 64024. The appeals were consolidated.

DECISION

*The Parties' Contentions*

The government contends the Board lacks jurisdiction to decide appellant's claim because the claim is "nothing more than a dispute between [appellant] and a former subcontractor" arising from a "new" contract appellant entered into with its subcontractor after the government terminated appellant's contract for convenience (gov't mot. at 1, 3).

Because the government is not a party to that contract, so argues the government, there is no privity of contract and the Board lacks jurisdiction over the dispute. As proof there is no privity of contract, the government refers to appellant's June 27, 2024, notice of appeal, wherein appellant's email to the Board describes its

claim as a contract dispute with its subcontractor (gov't mot. at 1, 3). Appellant contends it has met the jurisdictional threshold because its damages are the "direct and proximate" result of the government's breach of its contract with appellant, namely that the government refused or did not permit appellant to retrieve the forklifts when the contract required the return of the forklifts to appellant (app. opp'n at 2, 4, 8-10).

*The Scope of the Board's Jurisdiction Under the Contract Disputes Act*

The Board's jurisdiction over an appeal of a CDA claim is derived from 41 U.S.C. § 7105(e)(1)(A), which confers "jurisdiction to decide any appeal from a decision of a contracting officer . . . relative to a contract made by that department or agency." Under 41 U.S.C. § 7103(a)(1)-(2), the contracting officer's decision that gives rise to a Board appeal must be with respect to a claim by a "contractor." The term "contractor" is expressly defined in 41 U.S.C. § 7101(7) as "a party to a Federal Government contract other than the Federal Government."

It is the responsibility of appellant to establish the Board's jurisdiction. *Fidelity and Deposit Co. of Maryland*, ASBCA No. 63056, 22-1 BCA ¶ 38,154 at 185,302 (citing *Hellenic Air Force*, ASBCA No. 60802, 17-1 BCA ¶ 36,821 at 179,457). "Standing to bring an appeal before the Board is founded upon privity of contract with the government." *Id.* (Citing *Peerless Ins. Co.*, ASBCA No. 28887, 88-2 BCA ¶ 20,730 at 104,738). To establish the Board's jurisdiction, an appellant need only allege, not prove, "the existence of a contract" to which it is a party "'relative to' an express or implied contract with an executive agency." *Avue Techs. Corp. v. Sec'y of Health & Hum. Servs.*, 96 F.4th 1340, 1344 (Fed. Cir. 2024) (citing *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011)). Thus, a party needs to "allege, non-frivolously, that it has a contract (express or implied) with the federal government." *Id.* at 1345. In deciding a motion to dismiss, the Board accepts "as true all undisputed facts in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *Fidelity and Deposit Co. of Maryland*, ASBCA No. 63278, 23-1 BCA ¶ 38,341 at 186,178.

Appellant has met the requisite requirements for the Board to possess jurisdiction over appellant's claims. Appellant entered into a contract with the government to provide forklifts for the government's use. After the government terminated that contract for convenience, appellant submitted three claims based on an alleged breach of contract, specifically breach of the government's duty to return the forklifts to appellant (SOF ¶¶ 10-11, 14). Contrary to the government's attempts to cast appellant's claims as a dispute between appellant and its former subcontractor, appellant's claims request damages for the replacement cost of the two forklifts, and the accrued daily rental fees associated with the delayed return of the forklifts, both of which directly relate to its contract with the government. Indeed, the government has already conceded that appellant is entitled to $360,000 for the lost forklifts (SOF ¶ 12).

4

That appellant characterized its claim as one between it and its subcontractor in an email accompanying a notice of appeal to the Board (SOF ¶ 13) is irrelevant. The scope of the Board's jurisdiction is determined by the contents of the claim submitted to the contracting officer; thus, the claim, not other documents filed with the Board, determines the scope of our jurisdiction. *Fidelity*, 22-1 BCA ¶ 38,154 at 185,302 (citing *IBM Corp.*, ASBCA No. 60332, 18-1 BCA ¶ 37,002 at 180,190). Therefore, because we determine that appellant's claims relate to its contract with the government, we conclude the Board has jurisdiction over these appeals.

<u>CONCLUSION</u>

The government's motion to dismiss for lack of jurisdiction is denied.

Dated: July 10, 2025

ROBYN L. HAMADY
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

5

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 63938, 64024, Appeals of Peace Ambition Construction Company, rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals